# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA SALMANS, MICHAEL WEINER, PATRICIA BACHMANN, DIANE PIKLOR, and all others similarly situated, | ) ) ) ) ) | No. 12 C 3452 |
| | ) | Judge John J. Tharp |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BYRON UDELL & ASSOCIATES, INC., d/b/a ACCUQUOTE, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an action for violation of the Fair Labor Standard Act ("FLSA") requirement that employers pay overtime to non-exempt employees who work over 40 hours in a workweek. The plaintiffs were formerly employed as Account Executives ("AEs") by Byron Udell & Associates, Inc., d/b/a AccuQuote ("AccuQuote"). They allege that AccuQuote improperly classified all of its AEs, which the plaintiffs claim are essentially inside salespeople, as exempt from the requirements of the FLSA under the administrative exemption, and failed to pay the AEs overtime when they worked more than 40 hours in a workweek.

The plaintiffs move to conditionally certify their lawsuit as a collective action under the FLSA, on the grounds that all of AccuQuote's AEs are similarly situated and are or were subject to the same unlawful plan or policy. For the reasons stated below, the Court grants the plaintiffs' motion for conditional certification.

## BACKGROUND

AccuQuote is a life insurance quote provider headquartered in Illinois, with a satellite office in Colorado. The plaintiffs characterize AccuQuote as an "insurance sales company," but

AccuQuote characterizes its business as "educat[ing] consumers about the benefits of insurance and help[ing] consumers find insurance products appropriate for their needs and goals through consultation by telephone with AccuQuote AEs." Opening Br. (Dkt. 27) at 2; Resp. Br. (Dkt. 42) at 5.

The plaintiffs argue that the primary duty of AEs is to sell life insurance policies to consumers. To accomplish that goal, the AEs spend a majority of their time talking to potential clients on the phone and attempting to convince them to purchase insurance products. Via telephone, AEs gather information about consumers, review insurance offerings from numerous insurance carriers with whom AccuQuote maintains a relationship, and then advise consumers about their insurance options and help them apply for insurance policies. The AEs' telephone calls are recorded and can be (and sometimes are) monitored by their supervisors.

AccuQuote compensates its AEs based on sales commissions, with a guaranteed floor at a rate of $30,000 per year. More specifically, each AE is paid bi-weekly the greater of either a commission based on the policies he or she has placed, or a prorated portion of the $30,000 guaranteed salary. AccuQuote classifies all of its AEs as exempt from overtime compensation based on the administrative exemption, as codified at 29 U.S.C. § 213(a)(1). Therefore, although AEs sometimes work more than 40 hours per week, they are not compensated for that time except insofar as it leads to increased commissions if consumers purchase more insurance policies.

The plaintiffs submitted declarations from themselves and from other AEs regarding their job duties and AccuQuote's policies and practices.[1] The declarants have observed other AEs at

---

[1] Only three named plaintiffs submitted declarations in support of their motion for conditional certification, but on reply the plaintiffs submitted several additional declarations and exhibits. In order to prevent "sandbagging," issues presented for the first time on reply that could

their offices, and aver that the other AEs perform similar tasks as the declarants and are treated similarly by AccuQuote. Further, one plaintiff trained many other AEs on how to work with potential customers, and therefore has information about those AEs' job duties.

The defendants have submitted several declarations from other AEs indicating that those AEs did not view their role as "sales" but rather as educating potential customers and leading them to select appropriate insurance coverage. The defendants' declarations dispute the degree to which AEs are required to follow any "script" provided by AccuQuote, and describe their supervision as being more lax than indicated in the plaintiffs' declarations. Two of the AEs who provided declarations on behalf of AccuQuote work from home, and an additional AE states that he contacts only potential customers who previously applied for insurance but were not granted the policy for which they applied.

## DISCUSSION

The FLSA allows plaintiffs to bring a collective action to recover unpaid overtime compensation on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Additional would-be plaintiffs to FLSA collective actions must opt in to the lawsuit if the

---

and should have been raised in an opening brief are generally waived. *See Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 788 n. 17 (N.D. Ill. 2011). Several of the declarations the plaintiffs attached to their reply brief present new facts and arguments related to other AEs' job duties and compensation that were not raised in the plaintiffs' opening brief. *See, e.g.,* Dkt. 43-1 ¶¶ 14-15; Dkt. 43-2 ¶¶ 14-15; Dkt. 43-3 ¶¶ 13-14; Dkt. 43-4 ¶¶ 3-6. These facts could and should have been submitted with the plaintiffs' opening brief.

AccuQuote moved to strike the materials that should have been included in the plaintiffs' opening brief, but striking those materials would not have led to the efficient resolution of conditional class certification. If the declarations properly attached to the plaintiffs' opening brief would have been insufficient to entitle the plaintiffs to conditional class certification, the Court would have denied the plaintiffs' motion without prejudice. The plaintiffs could have simply moved a second time for conditional class certification, this time properly attaching the necessary materials to their opening brief, and the parties would have had to fully brief the motion a second time. To avoid this inefficiency, the Court allowed AccuQuote to file a surreply to address the materials the plaintiffs improperly reserved for their reply brief, and it considers all arguments and evidence presented in both the reply and surreply.

court allows conditional class certification. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010).

Neither Congress nor the Seventh Circuit has specified the procedure courts should use to decide FLSA certification and notice issues, but collective FLSA actions in this district generally proceed under a two-step process. *See, e.g., Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004).

First, the plaintiffs have the burden of showing that there are other similarly situated employees who are potential claimants. *Russell*, 575 F. Supp. 2d at 933; *Mielke*, 313 F. Supp. 2d at 762. To accomplish this, "the plaintiff must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Russell*, 575 F. Supp. 2d at 933 (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). Courts use a "lenient interpretation" of the term "similarly situated" in deciding whether plaintiffs meet this burden. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008). If the plaintiffs are able to show that other potential plaintiffs are similarly situated, courts may conditionally certify the case as a collective action and allow the plaintiffs to send notice of the case to similarly situated employees who may then opt in as plaintiffs. *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007).

In the second step of the collective action certification process, following the completion of the opt in and discovery, the defendant may ask the court to "reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011). During the second step, if the court

finds insufficient similarities, it may revoke conditional certification or divide the class into subclasses. *Id.*; *Russell*, 575 F. Supp. 2d at 933.

This case is currently at step one of the analysis. The plaintiffs claim that they have satisfied the "modest factual showing" necessary for conditional certification, but AccuQuote argues that the plaintiffs have failed to carry their burden.

## I. The Plaintiffs Show That Other AEs Are Similarly Situated And Subject To A Common Policy Or Practice That Violates The Law.

### A. Other AEs Are Similarly Situated.

The plaintiffs have provided declarations attesting to the duties they performed, as well as the tasks that they know that other AEs performed. The plaintiffs describe their duties as essentially selling insurance policies to prospective customers by phone. They claim that they know that their fellow AEs performed the same basic tasks because they "worked side by side in cubicles around the office" with other AEs and developed close relationships with the other AEs. *See* Dkt. 43-1 at ¶¶ 14-15; Dkt. 43-2 at ¶¶ 14-15; Dkt. 43-3 ¶¶ 13-14; Dkt. 43-4 ¶ 3. According to the declarations submitted by the plaintiffs, all AEs were expected to perform virtually identical duties. Dkt. 43-1 at ¶ 15; Dkt. 43-2 at ¶ 15; Dkt. 43-3 ¶ 14; Dkt. 43-4 ¶ 6. AccuQuote characterizes this evidence as the plaintiffs' "eavesdropping" on other AEs' telephone conversations. It contends that the plaintiffs cannot know what duties other AEs perform merely from "eavesdropping," but that is a mischaracterization of plaintiffs' evidence. It is not at all far-fetched to believe that employees who work side-by-side with one another over long periods of time will develop a general understanding of each other's duties, especially where the employees are performing very similar functions to one another. And in addition to the plaintiffs' observations of other employees, Plaintiff Michael Weiner also states that he trained new AEs on how to perform their job duties, and therefore he knew what duties other AEs were expected to

perform. That is another valid first-hand basis for the plaintiffs to testify about other AEs' job duties.

AccuQuote submitted declarations to show that other AEs are not similar to the plaintiffs, however, and it argues that the Court will need to consider the individual circumstances of each class member to examine his or her exempt status. AccuQuote's declarations reveal at least three major differences among AEs: (1) unlike the plaintiffs, many other AEs do not consider themselves as salespeople, (2) some AEs work from home or are otherwise subject to less supervision than the plaintiffs, and (3) some AEs work with a different group of potential customers.

For example, AE Erick Fettingis does not consider himself to be selling insurance policies. Dkt. 42-1 at 14 ¶ 5. Rather, he says he spends "sixty percent of [his] time consulting with potential customers about the benefits of obtaining insurance and the different types of insurance products available," and "thirty-five percent of [his] time helping customers close [insurance] applications by recommending carrier and product options and potential pricing that fits within their financial means as a prerequisite to submitting the application to the carriers [he] recommend[s] and the customer selects." *Id.* at 16 ¶ 11. But even though Fettingis does not consider these activities to be sales-related, they nonetheless appear to be facially similar to the activities that the plaintiffs describe. Further, Fettingis earns commissions based on the insurance policies purchased by AccuQuote customers for whom he submitted applications. *Id.* at 15 ¶ 7. Thus, Fettingis, along with the other AEs who do not consider themselves to be salespeople, are similarly situated to the plaintiffs, at least for the purposes of conditional class certification.

Barbara Sachs and Jan Netting, AEs who work from home, also submitted declarations on behalf of AccuQuote. Dkt. 42-1 at 19 ¶ 3; Dkt. 42-2 at 12 ¶ 2. These AEs appear to have more

freedom to set their own schedules and are presumably more independent and subject to less supervision than the plaintiffs. But even if they were subject to less supervision, they appear to have performed similar duties, and are similarly situated to the plaintiffs.

And finally, AccuQuote presents the declaration of Howard Weissman, an AE who consults with potential customers who applied for insurance through AccuQuote, but whose applications "come back differently than applied" (the Court assumes that this means the potential customers were denied the insurance they applied for at the premiums that they agreed to). Dkt. 42-2 at 8 ¶ 3. Unlike some AEs, Weissman does not make the initial contact with AccuQuote's customers, but he does appear to do work similar to that of the other AEs—he speaks to customers over the phone to find the best insurance coverage for an individual and to convince the individual to purchase that coverage. *Id.* Therefore Weissman, like other AEs who perform similar duties albeit towards a different group of potential customers, is also similarly situated to the plaintiffs.

At the conditional class certification stage, the plaintiffs do not need to show that other potential class members worked under *identical* circumstances, but only that their circumstances were similar. *Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL 2079585, *2 (N.D. Ill. May 24, 2010) ("Plaintiff need not show that potential class members performed identical duties to meet this standard.") And "whether . . . discrepancies [between potential class members] will become important down the road does not affect the current question of conditional certification." *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 751 (N.D. Ill. 2010). Courts do not "focus on the day-to-day work activities performed by each class member" until step two of the certification analysis. *Id.*; *see also Petersen v. Marsh USA, Inc.*, No. 10-1506, 2010 WL 5423734, *5 (N.D. Ill. Dec. 23, 2010) ("the rigorous comparison of day-to-day job

responsibilities urged by defendants is inappropriate at the conditional certification stage”); *Betancourt v. Maxim Healthcare Servs., Inc.*, No. 10-4763, 2011 WL 1548964, *7 (N.D. Ill. Apr. 21, 2011) (“defendant’s arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are only properly raised after the parties have conducted discovery”). Further, “[t]he Court does not make credibility determinations at this stage,” and “conflicts and reasonable inferences . . . have to be resolved in Plaintiffs’ favor at this stage.” *Boyd v. Alutiiq Global Solutions, LLC*, No. 11-753, 2011 WL 3511085, *4 (N.D. Ill. Aug. 8, 2011).

AccuQuote argues that the Court should come to the conclusions reached in *Boyd* and *Drew v. Shoe Show, Inc.*, No. 10-656, 2011 WL 4387096 (S.D. Ill. Sep. 19, 2011), where courts denied conditional class certification.[2] But both of those cases are distinguishable. In *Boyd*, the plaintiffs presented no evidence that potential class members were similarly situated except for inadmissible hearsay—statements that potential class members made to the plaintiffs about their job duties. 2011 WL 3511085 at *5. And in *Drew*, the plaintiff’s only evidence of potential class members’ duties came from her “brief experiences” with other employees “for very limited periods of time.” 2011 WL 4387096 at *4. In sharp contrast, two potential class members in this case have provided declarations about their own job duties, and the plaintiffs have presented non-hearsay evidence of their own direct observations of potential class members over long

---

[2] AccuQuote erroneously states that *Drew* was a case before the Northern District of Illinois. Surreply (Dkt. 52) at 6 (citing case as “N.D. Ill.”); *id.* at 8 (stating that *Drew* is “from the Northern District of Illinois”). It also states that the same judge who decided *Drew* also decided *Betancourt*, which the plaintiffs rely on. *Id.* at 7. But *Drew* was decided by J. Phil Gilbert, a District Judge in the Southern District of Illinois and *Betancourt* was decided by Jeffrey T. Gilbert, Magistrate Judge of the Northern District of Illinois. These misstatements were surely inadvertent and affect AccuQuote’s arguments only slightly, but the Court points them out because AccuQuote argues that *Boyd* (1) is entitled to extra consideration precisely because it is a case from this district, and (2) represents a retreat by “Judge Gilbert” from his previous conditional class certification ruling in *Betancourt*.

periods of time. The evidence that potential class members are similarly situated is much stronger in this case than it was in either *Boyd* or *Drew*. The plaintiffs have made the "modest factual showing" necessary to establish that they are similarly situated with other AEs in both of AccuQuote's offices at this stage.[3]

## B. Other AEs Are Subject To The Same Policy or Practice That Allegedly Violates The FLSA.

The plaintiffs claim that all AEs are subject to the same AccuQuote policy of designating all AEs as exempt from overtime compensation under the administrative exemption even though AEs should be non-exempt employees. AccuQuote does not deny that it classifies all of its AEs as exempt from overtime compensation. Instead, it vigorously maintains that its policy of classifying AEs as exempt is lawful because AEs are financial services employees, rather than salespeople, and therefore are exempt pursuant to regulations codified at 29 C.F.R. § 541.203(b). Resp. Br. (Dkt. 42) at 9-10. But deciding whether AEs are financial services employees, as opposed to salespeople, requires discovery and goes to the merits of the case, which AccuQuote admits is inappropriate at this stage. Response Br. (Dkt. 42) at 11 ("AccuQuote acknowledges that the Court does not address the merits to resolve Plaintiffs' Motion"). And without discovery the Court does not have access to sufficient facts to determine whether the administrative exemption is appropriate. All that is necessary at this stage is for the plaintiffs to establish that the class was subject to a common policy that *allegedly* violates the overtime provisions of the FLSA, which they have done. *Betancourt*, 2011 WL 1548964 at *4; *Collazo v. Forefront Educ., Inc.*, No. 08-5987, 2010 WL 335327, *3 (N.D. Ill. Jan. 28, 2010).

---

[3] AccuQuote also argues that it would be inefficient to grant conditional class certification, but the putative inefficiency alleged is essentially that the plaintiffs have "failed to make even [a] modest factual showing" that the class is similarly situated. Resp. Br. (Dkt. 42) at 18. The Court finds that the plaintiffs have made such a showing, and therefore it rejects AccuQuote's derivative efficiency argument.

## II. A Three-Year Statute Of Limitations Will Apply At This Time.

The parties disagree whether a two-year or three-year statute of limitations applies to this claim. FLSA claims are generally subject to a two-year statute of limitations, but the period is extended to three years for "cause[s] of action arising out of a willful violation." 29 U.S.C. § 255(a). Here, the plaintiffs allege a willful violation, but they have not alleged any specific facts that show that AccuQuote willfully violated the law. The plaintiffs cite several cases in which courts have allowed a three-year statute of limitations, but as AccuQuote correctly notes, none of those cases were at the notice stage involving plaintiffs who made only conclusory allegations of willfulness. However, courts in other districts have expressly held that a conclusory willfulness allegation is sufficient to justify providing notice to the putative class on the basis of the potentially applicable three year statute. *See Rosario v. Valentine Ave. Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 519 (E.D.N.Y. 2011) (explaining that specific statute of limitations issues can be addressed after notice and discovery); *Gambrell v. Weber Carpet, Inc.*, No. 10-2131, 2010 WL 5288173, *2 (D. Kan. Dec. 17, 2010) (approving notice on basis of three-year statute of limitations where plaintiff made only conclusory allegation of willfulness); *North v. Bd. of Trustees of Ill. State Univ.*, 676 F. Supp. 2d 690, 696 n. 8 (C.D. Ill. 2009) (where plaintiff alleges willfulness, "the three year statute of limitations can be assumed to apply until the Court determines whether the violation was 'willful'").

It is important to note that the issue presented in the context of the current motion is not whether plaintiffs have stated a claim (the defendants answered the complaint and did not move to dismiss plaintiffs' claims, in whole or part), but whether class notice should extend to persons who worked as AEs for AccuQuote dating back two years or three. Whether defendants violated the FLSA willfully, or at all, is a merits question that will not be addressed until later in the case. At present, however, there is no basis to exclude from the potential class AEs who worked for

the defendants within the past three years given the possibility that the plaintiffs will be able to show that the defendants acted willfully. This ruling should not be interpreted as a finding that AccuQuote acted willfully, or that a three-year statute of limitations is appropriate. Rather, because the plaintiffs have adequately pleaded willfulness, and it is *possible* that they will be able to prove willfulness after an opportunity for discovery, notice should be sent to all potential class members who may have valid claims if AccuQuote acted willfully.

Because an opt-in plaintiff is deemed to have commenced his or her claim when he or she files notice of consent to join the collective action, the notice should reflect that only those individuals who worked for AccuQuote within three years of the date on which the notice is sent are potentially eligible to join the class. *Rosario*, 828 F. Supp. 2d at 519 ("the statute of limitations runs for each individual plaintiff until he consents to join the action") (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011)); *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101-02 (7th Cir. 2004) (affirming dismissal of FLSA plaintiffs who failed to file consents to join action within statute of limitations).

* * *

For all of these reasons, the Court grants the plaintiff's motion for conditional class certification. The parties shall meet and confer regarding any objections to the form of the class notice proposed by the plaintiffs and file a motion within 14 days, agreed or setting forth the parties' respective positions, as to the form of the notice.

Date: February 26, 2013

_____
John J. Tharp, Jr.
United States District Judge